**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| Leroy J. Holliman | § | Prior Case No.: 4:22-cv-464 |
| 13606 Kelson Ave. | § | Case No.: 4:23-cv-1370 |
| Cleveland, Ohio 44110, | § | Judge |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **JURY DEMAND ENDORSED** |
| | § | **HEREON** |
| CoreCivic, Inc. | § | |
| dba Northeast Ohio Correctional Center | § | |
| 2240 Hubbard Rd. | § | |
| Youngstown, OH 44505 and | § | |
| c/o CT Corp Systems | § | |
| 4400 Easton Commons Way, Ste. 125 | § | |
| Columbus, OH 43219, and | § | |
| | § | |
| CoreCivic of Tennessee, LLC | § | |
| dba Northeast Ohio Correctional Center | § | |
| 2240 Hubbard Rd. | § | |
| Youngstown, OH 44505 | § | |
| c/o CT Corp Systems | § | |
| 4400 Easton Commons Way, Ste. 125 | § | |
| Columbus, OH 43219, | § | |
| | § | |
| Corrections Officer John Doe 1 | § | |
| In his individual and official capacity | § | |
| c/o Ohio Department of Rehabilitation and | § | |
| Corrections, Northeast Ohio Correctional Center | § | |
| 2240 Hubbard Rd. | § | |
| Youngstown, OH 44505 | § | |
| | § | |
| Corrections Officer John Doe 2 | § | |
| In his individual and official capacity | § | |
| c/o Ohio Department of Rehabilitation and | § | |
| Corrections, Northeast Ohio Correctional Center | § | |
| 2240 Hubbard Rd. | § | |
| Youngstown, OH 44505 | § | |
| | § | |
| Corrections Officer John Doe 3 | § | |
| In his individual and official capacity | § | |

c/o Ohio Department of Rehabilitation and §
Corrections, Northeast Ohio Correctional Center §
2240 Hubbard Rd. §
Youngstown, OH 44505, and §
§
John Does #4-25, corrections officers, §
authorized agents, representatives, §
or other entities, or by and through, §
their employees and/or agents of the §
Ohio Department of Rehabilitation and §
Corrections, Northeast Ohio Correctional Center §
whose names and addresses are unknown, §
c/o Ohio Department of Rehabilitation and §
Corrections, Northeast Ohio Correctional Center §
2240 Hubbard Rd. §
Youngstown, OH 44505 §
§
Defendants. §
§

## COMPLAINT

Now comes Plaintiff Leroy J. Holliman ("Mr. Holliman"), by and through Mr. Holliman's undersigned counsel, and for Mr. Holliman's refiled *Complaint* against the above-captioned defendants (collectively, the "NEOCC Defendants") Mr. Holliman hereby avers and claims as follows.

### JURISDICTION AND VENUE

1.     This Honorable Court has jurisdiction over this ripe case and controversy pursuant to 28 U.S.C. §1331.

2.     This Honorable Court has supplemental jurisdiction over any state law claims in this ripe case and controversy pursuant to 28 U.S.C. §1367.

2

3. This matter is timely refiled from Case No.: 4:22-cv-464 within the pertinent statute of limitations under R.C. §2305.10 and Ohio's Savings Statute R.C. §2305.19.

4. This action seeks relief for violations of Mr. Holliman's rights secured and guaranteed by 42 U.S.C. §1983, 42 U.S.C. §1985, the Eighth Amendment, applicable to the State through the 14th Amendment to the United States Constitution, the laws of the United States, and the laws of the State of Ohio.

5. The names and addresses of Defendants John Does #1-25 are unknown to Mr. Holliman; Mr. Holliman reserves the right to amend Mr. Holliman's pleadings upon discovery of the John Does' identities following disclosures and discovery herein.

6. The actions and ommissions giving rise to the instant dispute occurred in Mahoning County, Ohio such that venue is proper with this Honorable Court.

### STATEMENT OF FACTS

7. Mr. Holliman incorporates by reference all Mr. Holliman's allegations in the preceding paragraphs, as though the same were fully rewritten herein.

8. Mr. Holliman was born on September 14, 1993.

9. Mr. Holliman was an inmate, No. A761610, with ODRC beginning around April 2, 2019.

10. At all relevant times hereto, Mr. Holliman was an inmate with ODRC at NEOCC.

11. At all relevant times hereto, ODRC and/or CoreCivic employed Corrections Officer John Doe 1 ("CO John Doe 1") at NEOCC.

12. At all times relevant hereto, CO John Doe 1 was on duty, in uniform, and performing the duties of an ODRC and/or CoreCivic employee at NEOCC.

13. At all relevant times hereto, ODRC and/or CoreCivic employed Corrections Officer John Doe 2 ("CO John Doe 2") at NEOCC.

14. At all times relevant hereto, CO John Doe 2 was on duty, in uniform, and performing the duties of an ODRC and/or CoreCivic employee at NEOCC.

15. At all relevant times hereto, ODRC and/or CoreCivic employed Corrections Officer John Doe 3 ("CO John Doe 3") at NEOCC.

16. At all times relevant hereto, CO John Doe 3 was on duty, in uniform, and performing the duties of an ODRC and/or CoreCivic employee at NEOCC.

17. At all relevant times hereto, ODRC and/or CoreCivic employed Corrections Officers John Doe 4-25 ("CO John Does 4-25") at NEOCC.

18. At all times relevant hereto, CO John Does 4-25 were on duty, in uniform, and performing the duties of an ODRC and/or CoreCivic employee at NEOCC.

19. At all times relevant hereto, CO John Does 1-25's conduct described herein was committed within the scope of employment for ODRC and/or CoreCivic at NEOCC.[1]

20. At all times relevant hereto, CO John Does 1-25's conduct described herein was intended, or at the least calculated to do so, to facilitate or promote the business for which ODRC and/or CoreCivic employed CO John Does 1-25 at NEOCC.[2]

21. CoreCivic, Inc., CoreCivic of Tennessee, LLC, CO John Doe 1, CO John Doe 2, CO John Doe 3, and CO John Does 4-25 are referred to herein collectively as the NEOCC Defendants who acted for ODRC and/or CoreCivic at NEOCC.

---

[1] See Byrd v. Faber (1991), 57 Ohio St. 3d 56.
[2] See Little Miami Railroad Co. v. Wetmore (1869), 19 Ohio St. 110; Taylor v. Doctors Hospital (1985), 21 Ohio App. 3d 154; Caruso v. State (Ct. of Claims, 1998), 136 Ohio App. 3d 616, 621.

22.     At all relevant times, it was each NEOCC Defendants' duty to provide for the health, safety, and serious medical needs of persons in NEOCC Defendants' custody, including Mr. Holliman, as such persons had been deprived by Ohio of any means to protect themselves or care for their own medical needs.

23.     In March of 2021, Mr. Holliman was an inmate at the State of Ohio, Ohio Department of Rehabilitation & Correction, placed with CoreCivic at NEOCC, at the address captioned above.

24.     Upon information and belief, CoreCivic, Inc. and CoreCivic of Tennessee, LLC are affiliates (collectively, "CoreCivic").

25.     Upon information and belief, CoreCivic is an agent of the State of Ohio to provide incarceration for Ohio's inmates, including but not limited to Mr. Holliman, at NEOCC.

26.     Upon information and belief, CoreCivic employed CO John Doe 1, CO John Doe 2, CO John Doe 3, and CO John Does 4-25 for the benefit of ODRC at NEOCC.

27.     Upon information and belief, CoreCivic, CO John Doe 1, CO John Doe 2, CO John Doe 3, and CO John Does 4-25 acted as agents for ODRC at NEOCC.

28.     Around March 24, 2021, Mr. Holliman was residing in his cell at NEOCC when CO John Doe 1, CO John Doe 2, CO John Doe 3 entered Mr. Holliman's cell and "jumped him" ("Assault").

29.     Mr. Holliman requested records from the NEOCC Defendants on January 28, 2022, of the March 24, 2021, Assault without any record production in response.

30.     Mr. Holliman again requested records from the NEOCC Defendants on March 8, 2022, of the March 24, 2021, Assault without any record production in response.

31.     As of today's date, the NEOCC Defendants failed to produce Mr. Holliman's prison records, medical records, staff handbooks, and has claimed that they have nothing on file regarding Mr. Holliman.

32.     The NEOCC Defendants' refusal to provide Mr. Holliman with his requested records has rendered Mr. Holliman unable to ascertain the corrections officers who attacked him and the nurses and doctors who failed to properly treat Mr. Holliman such that Mr. Holliman's initial complaint in Case No.: 4:22-cv-464 was dismissed without prejudice.

33.     During the Assault, Mr. Holliman was beaten by CO John Doe 1, CO John Doe 2, and CO John Doe 3.

34.     In the Assault, CO John Doe 1, CO John Doe 2, and CO John Doe 3 removed Mr. Holliman's clothing and sprayed mace/pepper spray on Mr. Holliman's genitals.

35.     There is no legitimate penological reason to spray mace/pepper spray directly on an inmate's genitals.

36.     Following this attack, Mr. Holliman was placed in a solitary cell without medical attention for the Assault and mace/pepper spray.

37.     The walls of the solitary cell in which Mr. Holliman was held were covered in a prior inmate's blood and semen.

38.     Mr. Holliman suffered from both physical and mental injuries because of the Assault and subsequent mistreatment by the NEOCC Defendants.

39.     In the Assault, Mr. Holliman's left shoulder popped out of place, his one eye became swollen shut because of the beating, he was denied food by the NEOCC Defendants, and

suffered injuries to his ankles after being shackled for 2 days in his cell by the NEOCC Defendants without medical attention.

40.	The NEOCC Defendants denied Mr. Holliman medical care for his physical injuries in the Assault.

41.	Following Mr. Holliman's release from NEOCC, Mr. Holliman began seeking mental health treatment to deal with the trauma he endured because of the Assault.

42.	Mr. Holliman is still dealing with physical ramifications because of the Assault given that NEOCC Defendants denied Mr. Holliman medical treatment and given that Mr. Holliman's injuries never healed properly.

### COUNT ONE (1): VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983

43.	Mr. Holliman incorporates by reference all Mr. Holliman's allegations in the preceding paragraphs, as though the same were fully rewritten herein.

44.	Mr. Holliman reserves the right to plead in the alternative, pursuant to Civ. R. 8.

45.	The NEOCC Defendants had duties to Mr. Holliman under the Constitution of the United States, including but not limited to the Eighth Amendment's prohibition of cruel and unusual punishments to ensure that Mr. Holliman received adequate food, clothing, shelter, and medical care, and to take reasonable measures to guarantee the safety of Mr. Holliman.[3]

46.	The NEOCC Defendants had duties to Mr. Holliman under Ohio's Constitution, including but not limited to the duty not to inflict cruel and unusual punishments on Mr. Holliman.[4]

---

[3]	See Farmer v. Brennan (1994), 511 U.S. 825, 832.
[4]	See e.g., the Ohio Constitution Article 1 Section 9.

7

47.     Mr. Holliman's constitutional right to be free from cruel and unusual punishment was a clearly established constitutional right in March of 2021.[5]

48.     The constitutional right to be free from excessive force was a clearly established constitutional right in March of 2021.

49.     Upon information and belief, the NEOCC Defendants were aware of Mr. Holliman's constitutional right to be free from excessive force.

50.     Upon information and belief, the NEOCC Defendants were aware of Mr. Holliman's constitutional right to be free from cruel and unusual punishment.

51.     The NEOCC Defendants actively participated in the use of excessive force against Mr. Holliman in the NEOCC in March of 2021.

52.     The NEOCC Defendants actively participated in cruel and unusual punishment against Mr. Holliman in the NEOCC in March of 2021.

53.     The NEOCC Defendants were supervised and/or trained in the use of appropriate force on or before March of 2021.

54.     The NEOCC Defendants were supervised and/or trained in the use of appropriate punishment on or before March of 2021.

55.     In March of 2021, the NEOCC Defendants owed a duty of protection to Mr. Holliman against the use of excessive force.

56.     In March of 2021, the NEOCC Defendants owed a duty of protection to Mr. Holliman against the use of cruel and unusual punishment.

---

[5]  See Jones v. Muskegon Cty. (6th Cir. 2010), 625 F.3d 935, 941.

8

57. Through their actions and omissions stated herein, the NEOCC Defendants used excessive force against Mr. Holliman in violation of Mr. Holliman's clearly established and known Fourth Amendment constitutional rights.[6]

58. Through their actions and omissions stated herein, the NEOCC Defendants acted with a sufficiently culpable state of mind equivalent to criminal recklessness in the attack against Mr. Holliman at the NEOCC.[7]

59. Through their actions and omissions stated herein, the NEOCC Defendants so recklessly ignored the risk of injury to Mr. Holliman that the NEOCC Defendants were deliberately indifferent to the risk of injury to Mr. Holliman.

60. The NEOCC Defendants had duties to Mr. Holliman under Ohio law, including but not limited to, R.C. §2921.44, to provide Mr. Holliman, as a person confined in a detention facility, with adequate food, clothing, bedding, shelter, and medical attention.

61. The NEOCC Defendants had duties to Mr. Holliman under Ohio law, including but not limited to, R.C. §2921.44, to observe any lawful and reasonable regulations for the management of NEOCC.

62. The NEOCC Defendants had duties to Mr. Holliman imposed by ODRC's policies to provide Mr. Holliman with adequate food, clothing, shelter, and medical care, and to take reasonable measures to guarantee the safety of Mr. Holliman.

---

[6] See Graham v. Connor (1989), 490 U.S. 386, 395.
[7] See Farmer v. Brennan (1994), 511 U.S. 825, 838.

63. The NEOCC Defendants had duties to Mr. Holliman imposed by ODRC's policies and/or CoreCivic's policies to supervise ODRC's employees/agents and/or CoreCivic's employees/agents involved in the incarceration of inmates like Mr. Holliman in NEOCC.

64. The NEOCC Defendants had duties to Mr. Holliman imposed by ODRC's policies and/or CoreCivic's policies to provide adequate and timely medical attention.

65. The NEOCC Defendants individually or by and through agents or employees, negligently supervised, trained, and/or retained ODRC's employees/agents and/or CoreCivic's employees/agents identified herein.

66. The claims asserted herein arise from acts, failures to act and omissions committed, and failure to adhere to policies, procedures, and customs in place and/or implemented at NEOCC by the NEOCC Defendants while Mr. Holliman was in the custody of NEOCC.

67. Around March 24, 2021, the NEOCC Defendants, all of whom were acting under the color of law, violated the known and clearly established constitutional rights of Mr. Holliman in the Eighth Amendment's prohibition of cruel and unusual punishments to ensure that Mr. Holliman received adequate food, clothing, shelter, and medical care, and to take reasonable measures to guarantee the safety of Mr. Holliman.[8]

68. Around March 24, 2021, CO John Does 1-25, while employed by CoreCivic for ODRC, did in fact act with deliberate indifference to and callous disregard for Mr. Holliman's constitutional rights to timely and necessary medical care and treatment, and did so in a manner

---

[8] See Farmer v. Brennan (1994), 511 U.S. 825, 832.

that shocks the conscience and offends traditional notions of decency, all of which led to Mr.

Holliman's injuries as alleged and described herein.

69.     Around March 24, 2021, the NEOCC Defendants, while they were employed by

ODRC, did in fact, participate in the foregoing acts and omissions, ordering, authorizing, directing,

supervising, approving and/or ratifying the foregoing acts and omissions and acquiescing, failing

and/or refusing to prevent and intervene in the foregoing acts and omissions, which constitutes

conduct under the color of state law that deprived Mr. Holliman, of his clearly established and

known rights to be free from cruel and unusual punishment proscribed by federal and state law.

70.     The NEOCC Defendants were subjectively aware of the seriousness of Mr.

Holliman's need for emergency medical care and the risk of death or serious injury if not

supervised to timely provide appropriate medical care.

71.     Despite the obviousness of the risk of death or serious injury if not supervised to

timely provide appropriate medical care, the NEOCC Defendants ignored Mr. Holliman's injuries.

72.     By the actions and omissions described above, the NEOCC Defendants violated 42

U.S.C. §1983, deprived Mr. Holliman of the following well-settled constitutional rights that are

protected by the First, Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution: a)

The right to be free from deliberate indifference to Mr. Holliman's freedom from cruel and unusual

punishment, safety and medical needs while in state custody as an inmate, as secured by the

Eighth Amendment; and b) The right to be free from wrongful government interference with

familial relationships and right to companionship, society, and support of each other, as secured

by the First and Fourteenth Amendments.

11

73. The NEOCC Defendants violated Mr. Holliman's civil rights and denied Mr. Holliman the necessary medical assessment, evaluation, care, intervention, referral and treatment in violation of Mr. Holliman's constitutional rights, which resulted in physical pain and suffering, mental and emotional pain and suffering, death, pecuniary loss, including medical expenses past and future, future wage loss and/ or future loss of earning capacity, as well as all damages allowable under 42 U.S.C. §1988 for attorney fees and costs.

## COUNT TWO (2): VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983

74. Mr. Holliman incorporates by reference all Mr. Holliman's allegations in the preceding paragraphs, as though the same were fully rewritten herein.

75. Mr. Holliman reserves the right to plead in the alternative, pursuant to Civ. R. 8.

76. The NEOCC Defendants had a duty to intervene when other NEOCC Defendants violated Mr. Holliman's rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983.

77. The NEOCC Defendants observed and/or had reason to know that other NEOCC Defendants Assaulted Mr. Holliman and denied Mr. Holliman medical treatment.

78. The NEOCC Defendants had the opportunity and means to intervene and prevent the violation of Mr. Holliman's constitutional rights.

79. The NEOCC Defendants failed to intervene which resulted in the violation of Mr. Holliman's constitutional rights.

80. The actions and/or omissions of the NEOCC Defendants were willful, wanton, reckless, malicious, oppressive, and/or done with a conscious or reckless disregard for the constitutional rights of Mr. Holliman.

81. As a direct and proximate result of the NEOCC Defendants denying Mr. Holliman the necessary medical assessment, evaluation, care, intervention, referral and treatment in violation of Mr. Holliman's constitutional rights, the NEOCC Defendants caused Mr. Holliman physical pain and suffering, mental and emotional pain and suffering, pecuniary loss, including medical expenses past and future, future wage loss and/ or future loss of earning capacity, as well as all damages allowable under 42 U.S.C. §1988 for attorney fees and costs.

## COUNT THREE (3): VIOLATION 42 U.S.C. § 1985(3) IN CONSPIRACY TO DEPRIVE AND INTERFERE WITH MR. HOLLIMAN'S CIVIL RIGHTS

82. Mr. Holliman incorporates by reference all Mr. Holliman's allegations in the preceding paragraphs, as though the same were fully rewritten herein.

83. Mr. Holliman reserves the right to plead in the alternative, pursuant to Civ. R. 8.

84. The NEOCC Defendants by their concerted actions of falsifying, destroying, spoiling, and concealing evidence of denying Mr. Holliman timely medical treatment acted in concert to commit and accomplish unlawful acts resulting in the deprivation of rights, including a deprivation of Due Process, to Mr. Holliman.

85. The NEOCC Defendants were motivated and intended to deprive Mr. Holliman of the equal protection of the laws.

86. The NEOCC Defendants actions or omissions include, but are not limited to: 1) Assaulting Mr. Holliman; 2) denying Mr. Holliman medical treatment; 3) conspiring to deprive Mr. Holliman of his civil right to be free from the deliberate indifference to medical treatment; 4) conspiring to conceal and/or cover up the NEOCC Defendants' deprivation of Mr. Holliman's civil

13

right to be free from the deliberate indifference to medical treatment; and 5) all other illegal acts to conspire to deprive Mr. Holliman of his civil rights.

87. The NEOCC Defendants, by and through their actions thereby had a single plan, when they conspired and explicitly agreed to inflict wrongs against Mr. Holliman for their personal benefit and/or sick, twisted, sadistic and malicious propensities against Mr. Holliman and other inmates as demonstrated in the records as the behavior was regular and routine in NEOCC.

88. As a direct and proximate result of the civil conspiracy among the NEOCC Defendants, damages sustained by Mr. Holliman for the underlying wrongs and acts by each and every NEOCC Defendant individually is attributable to all as a whole.

89. As a direct and proximate result of the NEOCC Defendants' conspiracy in denying Mr. Holliman the necessary medical assessment, evaluation, care, intervention, referral and treatment in violation of Mr. Holliman's constitutional rights, the NEOCC Defendants caused Mr. Holliman physical pain and suffering, mental and emotional pain and suffering, death, pecuniary loss, including medical expenses past and future, future wage loss and/ or future loss of earning capacity, as well as all damages allowable under 42 U.S.C. §1988 for attorney fees and costs.

### COUNT FOUR (4): CIVIL CONSPIRACY

90. Mr. Holliman incorporates by reference all Mr. Holliman's allegations in the preceding paragraphs, as though the same were fully rewritten herein.

91. Mr. Holliman reserves the right to plead in the alternative, pursuant to Civ. R. 8.

92. The NEOCC Defendants utilized a malicious combination of two or more persons to injure Mr. Holliman, in a way not competent for one alone, resulting in damages to Mr. Holliman.

14

93. The NEOCC Defendants actions and/or omissions showed an express and/or implied agreement between each other, or otherwise acted in concert, or with a common understanding, while participating in the violation of Mr. Holliman's civil rights with a common understanding or design to commit an unlawful act.

94. The alleged damages are above and beyond those damages as plead and thereby exacerbate the damages herein.

95. As a direct and proximate result of the civil conspiracy among the NEOCC Defendants, damages sustained by Mr. Holliman for the underlying wrongs and acts by each and every NEOCC Defendant individually is attributable to all as a whole.

96. As a direct and proximate result of the NEOCC Defendants' conspiracy in denying Mr. Holliman the necessary medical assessment, evaluation, care, intervention, referral and treatment in violation of Mr. Holliman's constitutional rights, the NEOCC Defendants caused Mr. Holliman physical pain and suffering, mental and emotional pain and suffering, death, pecuniary loss, including medical expenses past and future, future wage loss and/or future loss of earning capacity, as well as all damages allowable under 42 U.S.C. §1988 for attorney fees and costs.

### COUNT FIVE (5): SPOILATION OF EVIDENCE

97. Mr. Holliman incorporates by reference all Mr. Holliman's allegations in the preceding paragraphs, as though the same were fully rewritten herein.

98. Mr. Holliman reserves the right to plead in the alternative, pursuant to Civ. R. 8.

99. Mr. Holliman requested evidence from the NEOCC Defendants on Mr. Holliman's injuries and lack of medical treatment, but the NEOCC Defendants never provided all the evidence of Mr. Holliman's injuries and lack of medical treatment.

100. The NEOCC Defendants, jointly and severally, knew or should have known of the pending or probable litigation with Mr. Holliman.

101. Upon information and belief, and/or in the alternative, the NEOCC Defendants, including but not limited to CO John Doe 1, forged NEOCC records to conceal unlawful and wrongful acts and/or omissions.

102. Upon information and belief, and/or in the alternative, the NEOCC Defendants destroyed or altered evidence.[9]

103. Upon information and belief, and/or in the alternative, the NEOCC Defendants' spoilation of evidence disrupted and/or will disrupt Mr. Holliman's case.

104. The NEOCC Defendants acted with actual malice towards Mr. Holliman.

105. The NEOCC Defendants acted with a conscious disregard for the safety of Mr. Holliman where there was significant risk of substantial harm to Mr. Holliman.

106. The NEOCC Defendants spoilation of evidence damaged Mr. Holliman more than $75,001.00, as will be more fully proven in either a trial or dispositive motion in this matter.

### COUNT SIX (6): INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

107. Mr. Holliman incorporates by reference all Mr. Holliman's allegations in the preceding paragraphs, as though the same were fully rewritten herein.

108. As described above, CO John Does 1-25 should have known that their actions against Mr. Holliman would result in serious physical and mental and emotional injuries and distress to Mr. Holliman.[10]

---

[9] See Smith v. Howard Johnson (1993), 67 Ohio St.3d 28, 29.
[10] See Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369, 374-75.

109.    As described above, CO John Does 1-25's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.[11]

110.    As described above, CO John Does 1-25's actions were the proximate cause of Mr. Holliman's injuries.[12]

111.    As described above, Mr. Holliman's physical, mental, and emotional injuries suffered are serious and of a nature that no reasonable man could be expected to endure such injuries.[13]

112.    As described above, CO John Does 1-25 acted with actual malice towards Mr. Holliman.

113.    As described above, CO John Does 1-25 acted with a conscious disregard for the safety of Mr. Holliman where there was a significant risk of substantial harm to Mr. Holliman.

114.    As a direct result of said CO John Does 1-25's actions, Mr. Holliman suffered permanent and substantial physical deformity.

115.    As a direct result of said CO John Does 1-25's intentional infliction of emotional distress, Mr. Holliman has been damaged in an amount more than Seventy-Five Thousand Dollars ($75,000.00), as will be more fully proven in either a trial or dispositive motion in this matter.

### COUNT SEVEN (7): ASSAULT

116.    Mr. Holliman incorporates by reference all Mr. Holliman's allegations in the preceding paragraphs, as though the same were fully rewritten herein.

---

[11] See Yeager, 6 Ohio St.3d at 374-75.
[12] See Yeager, 6 Ohio St.3d at 374-75.
[13] See Yeager, 6 Ohio St.3d at 374-75.

117.     As described above, CO John Does 1-3 assaulted Mr. Holliman when CO John Does 1-3 intentionally offered or attempted, without authority or consent, to harm or offensively touch Mr. Holliman as described above that reasonably placed Mr. Holliman in fear of such contact by CO John Does 1-3.[14]

118.     CO John Does 1-3 officers acted with actual malice towards Mr. Holliman.

119.     CO John Does 1-3 acted with a conscious disregard for the safety of Mr. Holliman where there was a significant risk of substantial harm to Mr. Holliman.

120.     As a direct result of said CO John Does 1-3's actions, Mr. Holliman suffered permanent and substantial physical deformity.

121.     As a direct result of said CO John Does 1-3's assault, Mr. Holliman has been damaged in an amount more than Seventy-Five Thousand Dollars ($75,000.00), as will be more fully proven in either a trial or dispositive motion in this matter.

## COUNT EIGHT (8): BATTERY

122.     Mr. Holliman alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

123.     As described above, CO John Does 1-3 intentionally touched Mr. Holliman's person without Mr. Holliman's consent.[15]

---

[14]  See Batchelder v. Young (Ohio App. 11 Dist., 2005), 11th Dist. Trumbull No. 2005-T-0150, 2006-Ohio-6097, ¶ 23, fn. 3.
[15]  See Snyder v. Turk (Ohio App. 2 Dist., 1993), 90 Ohio App.3d 18, 23; Batchelder, supra, at ¶ 23, fn. 3.

124.     As described above, CO John Does 1-3 acted with the intent to cause a harmful or offensive contact with Mr. Holliman, and the said harmful contact resulted in injuries to Mr. Holliman.[16]

125.     As described above, CO John Does 1-3 intended to batter Mr. Holliman when CO John Does 1-3 entered Mr. Holliman's cell and attacked him.[17]

126.     As described above, CO John Does 1-3 desired to cause the consequences of CO John Does 1-3's actions against Mr. Holliman.[18]

127.     As described above, CO John Does 1-3 believed that the consequences of CO John Does 1-3's actions against Mr. Holliman were substantially certain to result in substantial harm.[19]

128.     As described above, CO John Does 1-3 acted with actual malice towards Mr. Holliman.

129.     As described above, CO John Does 1-3 acted with a conscious disregard for the safety of Mr. Holliman where there was a significant risk of substantial harm to Mr. Holliman.

130.     As a direct result of said CO John Does 1-3's actions, Mr. Holliman suffered permanent and substantial physical deformity.

131.     As a direct result of said CO John Does 1-3's batteries, Mr. Holliman has been damaged in an amount more than Seventy-Five Thousand Dollars ($75,000.00), as will be more fully proven in either a trial or dispositive motion in this matter.

---

[16]  See Love v. Port Clinton (1988), 37 Ohio St.3d 98, 99.
[17]  See Harasyn v. Normandy Metals, Inc. (1990), 49 Ohio St.3d 173, 175.
[18]  See Harasyn, 49 Ohio St.3d at 175.
[19]  See Harasyn, 49 Ohio St.3d at 175.

## COUNT NINE (9): VICARIOUS LIABILITY

132.     Mr. Holliman alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

133.     CO John Does 1-25 are persons and/or businesses whose names and addresses could not be discovered.

134.     Upon information and belief, CO John Does 1-25 committed acts and/or omissions described above which directly and proximately cause Mr. Holliman's injuries and damages as stated in this Complaint.

135.     Upon information and belief, CO John Does 1-25 are employees or agents for CoreCivic and Ohio.

136.     CoreCivic is vicariously liable for the acts and/or omissions of CO John Does 1-25 which directly and proximately caused Mr. Holliman's injuries and damages as stated in this Complaint.

137.     CO John Does 1-25 and CoreCivic damaged Mr. Holliman more than Seventy-Five Thousand Dollars ($75,000.00), as will be more fully proven in the trial on the merits herein.

## PRAYER FOR RELIEF

**WHEREFORE,** for all the aforestated reasons, Mr. Holliman prays that this Honorable Court will award Mr. Holliman the following relief:

A.     Joint and several judgments for compensatory and punitive damages, with pre and post judgment interest at the statutory rate until paid in full, attorneys' fees, expert costs, and costs against the NEOCC Defendants in favor of Mr. Holliman;

B.      An award of attorneys' fees against said defendants in favor of Mr. Holliman under

42 U.S.C. §1988(b);

C.      An award of expert fees against said defendants in favor of Mr. Holliman under 42

U.S.C. §1988(c); and

D.      For all other relief, as may be necessary and appropriate and/or to which Mr.

Holliman is entitled, as a matter of law and/or equity, including but not limited, reasonable

attorneys' fees, costs, and interest.

Respectfully submitted,

SELPH LAW

/s/ *Theran J. Selph, Sr.*
Theran J. Selph, Sr.            (0079376)
PO Box 341318
Columbus, Ohio 43234-1318
(614) 453-0971/(866) 519-5298 (facsimile)
tselph@selphlaw.com
*Counsel for Plaintiff Leroy J. Holliman*

## JURY DEMAND

Pursuant to Civl R. 38 Mr. Holliman demands a trial by jury on all counts listed in the

Complaint.

/s/ *Theran J. Selph, Sr.*
Theran J. Selph, Sr.      (0079376)
*Counsel for Plaintiff Leroy J. Holliman*

###

21